In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00378-CV
_____

**KEC INTERNATIONAL LIMITED, Appellant**

**V.**

**JYOTI STRUCTURES LIMITED AND JYOTI AMERICAS LLC, Appellees**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-12-13289-CV**

**MEMORANDUM OPINION**

KEC International Limited (KEC) filed an interlocutory appeal from the trial court's denial of KEC's special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2016). We affirm.

BACKGROUND

On December 13, 2013, Jyoti Structures Limited (Jyoti India) and Jyoti Americas LLC (Jyoti USA) (collectively Plaintiffs or Appellees or Jyoti) filed a suit against KEC and three other defendants, Isolux Ingenieria, SA (Isolux Spain),

Wind Energy Transmission Texas, LLC (WETT), and Kalpataru Power Transmission Limited (Kalpataru), relating to contracts for the design and construction of an electrical transmission line in Texas. Defendants Kalpataru and KEC are foreign companies whose principal place of business is located in India. Kalpataru and KEC filed a "Special Appearance to Present Motion Objecting to Jurisdiction, and Subject Thereto, Motion to Quash[,]" arguing that the trial court lacked personal jurisdiction over KEC. Plaintiffs filed a first amended petition, and KEC filed a Brief in Support of its Special Appearance. On November 18, 2014, the Plaintiffs filed a second amended original petition ("Second Petition"), adding Isolux Corsan, LLC (Isolux Texas) as a defendant and asserting that the trial court has personal jurisdiction over all defendants based on their "continuous and systematic contacts with this State[.]" KEC and Kalpataru set their special appearance motions for submission on July 20, 2015. On July 20, 2015, the trial court signed an order denying both special appearances. After the trial court issued its ruling, KEC and Kalpataru each filed a reply. Neither KEC nor Kalpataru requested leave from the trial court to late-file their reply briefing, nor did they ask the trial court to reconsider its ruling in light of the reply. This interlocutory appeal followed.[1]

---

[1] Kalpataru and KEC both filed a notice of appeal in this interlocutory

ALLEGATIONS IN THE SECOND PETITION

The Second Petition was the live pleading at the time the trial court entered its Order denying the special appearances. In the Second Petition, Jyoti alleged that Isolux Texas, a Texas company with its principal place of business in Travis County, Texas, entered into an Engineering, Procurement and Construction Contract with WETT effective April 19, 2011, wherein Isolux Texas agreed to design, engineer, manufacture, supply, install, procure, ship, construct, interconnect, document, test and commission seven new transmission line segments totaling 386 miles and five new switching stations, together with associated facilities, on a turnkey basis. Isolux Spain entered into a contract with KEC wherein KEC agreed to manufacture and deliver steel lattice towers to be used by Isolux Texas in connection with building a transmission line in Texas on behalf of WETT. Jyoti alleged that KEC subcontracted a portion of the supply agreement to Jyoti because KEC was unable to manufacture and deliver to Isolux Spain all of the product and materials required under KEC's contract with Isolux Spain. According to Jyoti, in March of 2012, KEC and Jyoti entered into a Purchase Order (the KEC Agreement), whereby Jyoti "agreed to 'manufacture, test

appeal. However, on September 14, 2016, Kalpataru filed a Motion to Dismiss its Appeal. *See* Tex. R. App. P. 42.1(a)(1). This Court granted the motion on October 6, 2016. *See id*. Isolux Spain, Isolux Texas, and WETT are not parties to this interlocutory appeal.

3

(excluding tower testing), mark, prepare for shipment, and deliver the steel lattice tower and associated Bolts, Nuts and washers' to KEC in Texas in connection with Project."

Jyoti alleged that after Jyoti's completion of its deliveries, Isolux Spain, Isolux Texas, KEC, and Kalpataru failed to pay Jyoti the total amount due and owing. In the Second Petition, Jyoti asserted multiple causes of action against all of the Defendants. Jyoti requested a declaratory judgment and asserted causes of action against KEC for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, and violations of various state statutes.

Jyoti filed a response to KEC's special appearance. In Jyoti's response, Jyoti argued that the trial court had specific jurisdiction over the claims and Jyoti attached supporting exhibits. Jyoti did not make a general jurisdiction argument in its response.[2] The trial court denied KEC's special appearance. After the trial court's ruling, KEC filed a reply in support of its special appearance. This interlocutory appeal followed.

---

[2] In its special appearance pleading, KEC challenged the trial court's exercise of general and specific jurisdiction. In Plaintiffs' response to KEC's special appearance, Plaintiffs did not respond to KEC's challenge to general jurisdiction. The Plaintiffs' response to the special appearance asserted only that jurisdiction is proper under a "specific jurisdiction" analysis. Because we find specific jurisdiction exists and affirm the trial court on that basis, we need not decide whether the trial court has general jurisdiction over KEC.

STANDARD OF REVIEW

Whether the trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *Moncrief Oil*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by [the] evidence." *Moncrief Oil*, 414 S.W.3d at 150.

If the plaintiff meets its initial burden, "the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled." *Id.* at 149; *BMC Software Belgium, N.V. v Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A defendant may negate the plaintiff's jurisdictional allegations on either a factual basis or a legal basis. *Kelly*, 301 S.W.3d at 659.

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the

trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* at 659. (footnotes omitted).

Before determining the jurisdictional question, a trial court must frequently resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. If the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.* at 795. Due process requires that the jurisdictional inquiry be separate and distinct from the underlying merits. *See Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 81 (Tex. App.—Houston [1st Dist.] 2008, no pet.). When reviewing Plaintiffs' jurisdictional allegations, we ask only whether the allegations are sufficient to invoke the exercise of personal jurisdiction over the defendant without regard to the merits of Plaintiffs' claims. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-91 (Tex. 2005) (rejecting relevancy, for purposes of specific jurisdiction, of inquiry

6

into defendant's directing a tort in Texas because that theory improperly equates jurisdictional inquiry with underlying merits).

PERSONAL JURISDICTION

A trial court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is authorized by statute and is consistent with federal and state constitutional due process guarantees. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (citing *Moncrief Oil*, 414 S.W.3d at 149); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). The Texas long-arm statute provides that "[i]n addition to other acts that may constitute doing business[]" in Texas, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The statutory list of activities that may constitute "doing business" is non-exclusive. *See id.*; *BMC Software*, 83 S.W.3d at 795. "[S]ection 17.042's broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software*, 83 S.W.3d at 795 (quoting *U-Anchor Adver., Inc. v. Burt*,

7

553 S.W.2d 760, 762 (Tex. 1977)); *see also Conner v. Conticarriers & Terminals*, 944 S.W.2d 405, 410 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("The broad 'other acts' language of the long-arm statute permits an expansive reach, limited only by federal constitutional requirements of due process."); *Tex. Commerce Bank Nat'l Ass'n v. Interpol '80 Ltd. P'ship*, 703 S.W.2d 765, 771-72 (Tex. App.—Corpus Christi 1985, no writ) (explaining that the Texas long-arm statute reaches to the limits of the due process clause, and concluding that, although the non-resident defendant contracted with another non-resident, the non-resident's contracting to acquire Texas real property interests and participating in the drilling of an oil well in Texas with the intent to profit from the venture was sufficient under the "other acts" language of the long-arm statute to constitute doing business within the scope of the statute and due process).[3]

Even if an allegation of jurisdiction satisfies the Texas long-arm statute, the allegation may not satisfy the due process requirements under the United States Constitution. *Moncrief Oil*, 414 S.W.3d at 149. Accordingly, a court must also

---

[3] In Plaintiffs' Second Petition, Jyoti asserted the Defendants were doing business in Texas and that the Defendants' activities "includ[ed] but [are] not limited to [] contractually agreeing to deliver a product it manufactured or fabricated to the state of Texas for use in Texas." KEC did not argue in its special appearance that Appellees' claims do not fall within the long-arm statute's "other acts" language, nor does KEC specifically respond to Appellees' assertion on appeal that it is "undisputed" that the claims fall within the statute's broad language.

determine if the exercise of personal jurisdiction over the defendant comports with due process. *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016); *CRS Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Asserting personal jurisdiction over a nonresident defendant comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction comports with traditional notions of fair play and substantial justice. *TV Azteca*, 490 S.W.3d at 36; *Retamco Operating*, 278 S.W.3d at 337.

The minimum contacts analysis requires "'some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on the defendant's activities and expectations. *Am. Type Culture Collection*, 83 S.W.3d at 806. A defendant's contacts may give rise to either general jurisdiction or specific jurisdiction. *See Cornerstone Healthcare*, 493 S.W.3d at 71; *Moncrief Oil*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). Continuous and systematic contacts with Texas may give rise to general jurisdiction while specific jurisdiction exists when the cause of

9

action arises out of or is related to specific purposeful activities of the defendant in Texas. *Moncrief Oil*, 414 S.W.3d at 150.

> For a trial court to have specific jurisdiction over a defendant, the cause of action must arise out of or relate to the defendant's contact with the forum state. On the other hand, so long as the defendant has had continuous and systematic contacts with the forum state, a trial court has general jurisdiction even if the cause of action did not arise from the defendant's purposeful conduct in the state.

*Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)).

### SPECIFIC JURISDICTION

Specific jurisdiction exists when there is evidence that the defendant purposefully availed itself of the forum's jurisdiction by contacts or activities in the forum state, and the cause of action arises from or is related to those contacts or activities. *Retamco Operating*, 278 S.W.3d at 338 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *Michiana*, 168 S.W.3d at 784. When determining specific jurisdiction, the focus is on the relationship among the forum, the defendant, and the litigation. *Cornerstone Healthcare*, 493 S.W.3d at 71; *Moncrief Oil*, 414 S.W.3d at 150; *Retamco Operating*, 278 S.W.3d at 338. There

10

must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Moncrief Oil*, 414 S.W.3d at 156. The contacts must be such that the defendant "could reasonably anticipate being haled into court" in Texas. *TV Azteca*, 490 S.W.3d at 37; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). We must analyze the jurisdictional contacts on a "claim-by-claim basis" unless all claims arise from the same forum contacts.[4] *Moncrief Oil*, 414 S.W.3d at 150-51.

In this case, Jyoti asserts that all their claims are based on the same forum contacts and that this Court need not separately assess KEC's Texas contacts as to each of Appellees' claims. KEC does not challenge this assertion. Therefore, we need not engage in a "claim-by-claim" analysis. *See Sutton Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007); *see also Davis Invs., L.P. v. Holtgraves*, No. 14-08-00222-CV, 2009 Tex. App. LEXIS 3801, at \*\*33-34 n.7 (Tex. App.—Houston [14th Dist.] Feb. 26, 2009, pet. denied) (mem. op.).

---

[4] When separate claims are based on the same forum contacts, a separate analysis of each claim is not required. *See Sutton Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007); *Davis Invs., L.P. v. Holtgraves*, No. 14-08-00222-CV, 2009 Tex. App. LEXIS 3801, at \*\*33-34 n.7 (Tex. App.—Houston [14th Dist.] Feb. 26, 2009, pet. denied) (mem. op.) (agreeing "with other courts that generally a specific-jurisdiction analysis should be performed on a claim-by-claim basis[]" but declining to do so because plaintiff's claims all arose from the same facts and defendant asserted a single basis for his special appearance to each claim).

When considering whether a nonresident defendant purposefully availed itself of the privilege of conducting activities within Texas, we look at three factors: (1) whether the defendant had contacts and activity in and with Texas; (2) whether the contacts relied upon were purposeful rather than random, fortuitous, or attenuated; and, (3) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Cornerstone Healthcare*, 493 S.W.3d at 70-71; *Moncrief Oil*, 414 S.W.3d at 151. A court focuses on the quality and nature of the defendant's contacts rather than the number of contacts. *TV Azteca*, 490 S.W.3d at 38 (quoting *Moncrief Oil*, 414 S.W.3d at 151); *Retamco Operating*, 278 S.W.3d at 339.

### ISSUES ON APPEAL

In four issues, KEC argues that the trial court erred in denying KEC's special appearance because the record establishes: (1) KEC lacks sufficient minimum contacts with Texas; (2) Appellees' claims do not arise from or relate to any purposeful contact of KEC with Texas; (3) KEC did not purposefully direct any activities toward Texas or otherwise purposefully avail itself of any benefit, advantage or profit in Texas; and (4) exercising personal jurisdiction over KEC would offend traditional notions of fair play and substantial justice.

12

In Plaintiffs' Second Petition, Plaintiffs alleged that although Jyoti's agreement with KEC was separate from the Isolux contracts, all of the agreements were "closely related and intertwined." Plaintiffs asserted that, once Jyoti began work on manufacturing and delivering all required products to the Project site in Texas, Jyoti worked closely with Isolux, KEC, and Kalpataru, and that Isolux, KEC, and Kalpataru had representatives on site in Texas supervising Jyoti's delivery and production and interfaced directly with Jyoti employees throughout the Project.

In KEC's special appearance, KEC pleaded that the trial court did not have jurisdiction over KEC because neither KEC nor its property is amenable to service of process issued by a Texas court, and KEC does not have minimum contacts with Texas. As to minimum contacts, KEC specifically asserted the following:

    a. KEC is not a resident of Texas and is not required to maintain and does not maintain a registered agent for service in Texas;

    b. KEC does not now engage and has not engaged in business in Texas or committed any tort, in whole or in part, within the State;

    c. KEC does not maintain a place of business, mailing address or phone number in Texas and has no property, real or personal, within the State;

    d. KEC does not have any employees, servants or agents within the State, and it has not recruited any Texas residents, directly or through an intermediary located in Texas, for employment inside or outside this State;

    e. KEC does not have any contractual relationship with Jyoti Americas LLC or Wind Energy Transmission Texas, LLC;

13

f. KEC has not contracted by mail or otherwise with any Texas resident to provide services or perform any contract in whole or in part in Texas;

g. KEC has no substantial connection with Texas arising from any action or conduct of KEC purposefully directed toward Texas;

h. Plaintiffs' claims do not arise from and are not related to any activity conducted by KEC in Texas; and

i. KEC has no continuing and systematic contacts with Texas.

KEC also argued that the trial court's exercise of jurisdiction over KEC or its property would offend traditional notions of fair play and substantial justice and would deprive KEC of its right to due process of law guaranteed by the United States Constitution. KEC attached a sworn declaration by KEC's Vice President of Marketing & Business Development, who swore that the factual statements contained in the special appearance were within her personal knowledge and were true and correct to the best of her knowledge.

In KEC's Brief in Support of its Special Appearance, KEC asserted that the alleged contacts with Texas do not give rise to specific jurisdiction because none of the Jyoti supplies were delivered by KEC to Texas. Rather, the products were delivered to Texas by Jyoti or its third-party logistics company. According to KEC, even if the deliveries to Texas give rise to Jyoti's claims, those claims would stem from Plaintiffs' (not KEC's) contacts with Texas. KEC also argues that Plaintiffs' claims against KEC arise solely from KEC's contract with Jyoti India, the contract was negotiated in India, the alleged nonpayment of money is for payments due in

India, and KEC does not owe money to Jyoti USA because KEC did not have a contractual relationship with Jyoti USA. KEC contended that Plaintiffs' claim cannot give rise to specific jurisdiction based solely on KEC's communication with Jyoti USA or its travel to Texas because (1) such contacts did not give rise to Plaintiffs' claims against KEC, and (2) those contacts are not contacts between KEC and Texas, but instead are contacts between KEC and Jyoti USA, which happens to be located in Texas. KEC contended that the exercise of personal jurisdiction over KEC would offend traditional notions of fair play and substantial justice because forcing KEC to defend Plaintiffs' claims would be burdensome because Texas is a foreign legal system, KEC's employees do not reside in Texas, and all of KEC's records concerning relevant contracts are in India. According to KEC, it did not do anything in this matter to anticipate being sued in a Texas court, and India, not Texas, would have an interest in providing a forum in which the case can proceed because the only plaintiff with which KEC had a contractual relationship was Jyoti India and no relevant parties are Texas citizens. KEC argued that Plaintiffs' "baseless inclusion" of Jyoti USA in the case does not and cannot create an interest for Texas in adjudicating the claims.

In Plaintiffs' response to KEC's special appearance, Plaintiffs emphasize among other points that KEC agreed in the contract that any disputes would be

15

resolved in Texas, KEC contractually agreed to be bound by Texas law, KEC specifically contracted to deliver the materials to Texas, neither KEC nor Jyoti India was entitled to payment until the material was delivered to Texas, and KEC was responsible for the costs of delivering the product to Texas. Plaintiff attached a copy of the contract between KEC and Isolux Spain that required KEC to deliver the fabricated materials to Texas, and a deposition transcript of Sandeep Hanumant Tambe (Tambe), KEC's corporate representative, who testified that KEC was not required to pay Jyoti India until Jyoti India had delivered the material to Big Spring, Texas, or Spur, Texas. Plaintiffs also attached a copy of the contract between KEC and Jyoti India, which stated that Jyoti India "shall deliver the steel towers and hardware to the delivery location identified in each purchase order release (Big [S]pring and / or Spur [,Texas]) by the delivery date(s) established in each purchase order release[,]" required Jyoti India to deliver the product to either of the identified Texas sites in order to be paid by KEC, and KEC remained responsible for all risks of loss or damage to the product up to the time of delivery in Texas. Plaintiffs also referenced Tambe's deposition transcript wherein Tambe testified that the contract between KEC and Jyoti India required Jyoti India to deliver the product to the identified locations in Texas and that Jyoti India would be in breach of its contract with KEC if it did not comply. Plaintiffs also alleged

16

that KEC sent employees to Texas on several occasions in regard to the Project, and that KEC communicated with Jyoti in Texas regarding the materials fabricated and delivered to the Texas job site and that KEC "oversaw [Jyoti USA]'s progress." Plaintiffs attached KEC's Objections and Responses to Plaintiff's First Set of Jurisdictional Interrogatories and Request for Production, wherein one response explained that:

> . . . Mr. Raju and Mr. Y.N. Dange from KEC travelled [sic] to Austin, Texas for four days in September 2012, to meet with Isolux personnel to discuss certain issues related to bolts and nuts supplied by KEC. These issues were not related in any way to Plaintiffs. In November 2012, Mr. Jagdish Ahirrao from KEC visited the Isolux yards in Big Spring and Spur, Texas, where Jyoti USA and Jyoti India representatives were present. The main purpose of the visit was to get feedback from Isolux on towers supplied by KEC, and during the visit, Mr. Ahirrao received feedback concerning deliveries made by Jyoti to the yards. Because Mr. Ahirrao was already in Texas, he also visited, during the same trip, the Jyoti USA facility, where he met with Jyoti USA and Jyoti India personnel to discuss certain production matters. KEC representatives did not travel to Texas to supervise or oversee any deliveries, assembly or any other aspect of the project related to material provided by Plaintiffs.

Plaintiffs also attached to their response copies of emails Plaintiffs allege were from KEC to Jyoti personnel in Texas regarding KEC's and Jyoti USA's performance related to the KEC Agreement and the Project, and Plaintiffs referred

17

to Tambe's deposition transcript wherein Tambe testified that KEC sent a representative to the Jyoti USA plant in Conroe, Texas, to attend meetings in Big Spring and Spur, Texas, regarding the Project.

ANALYSIS

<u>KEC's Purposeful Contacts or Advantages</u>

KEC argues that KEC's contacts with Texas were fortuitous, and that KEC did not create any contacts with Texas and that contacts between Jyoti and Texas or between third-parties and Texas are irrelevant. According to KEC, KEC "had no involvement" in the delivery of supplies for the Project to Texas and the supplies were delivered to Isolux in Texas "by Jyoti or *its* third-party logistics company." However, KEC concedes that its contract with Jyoti India required Jyoti to deliver the supplies to Texas.

In arguing that delivery of goods to Texas, alone, does not satisfy the purposeful availment test, KEC cites to this Court's memorandum opinion in *Hogs Dogs & Lace, LLC v. Sharp Entertainment, LLC*, No. 09-13-00437-CV, 2014 Tex. App. LEXIS 7474 (Tex. App.—Beaumont July 10, 2014, no pet.), and an opinion from the Houston First Court of Appeals, *Proppant Solutions, LLC v. Delgado*, 471 S.W.3d 529 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

18

In *Hogs Dogs & Lace*, plaintiffs, Ward and Hogs Dogs & Lace, sued Sharp Entertainment, LLC, A&E Television Networks, LLC, and two individuals, relating to Ward's "concept" for a television show presenting three women engaged in the sport of hog hunting. 2014 Tex. App. LEXIS 7474, at *1. The plaintiffs alleged that Sharp Entertainment, a nonresident production company with its principal place of business in New York, and the other defendants engaged in wrongful conduct relating to Ward's concept for the women's hog hunting show. *Id.* at **1-2. This Court noted that a "seller's awareness that the stream of commerce may or will sweep [a] product into the forum state does not convert the mere act of placement of the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.* at *25. The fact that Sharp's television series may have been viewed by the general public in Texas (without evidence of additional conduct indicating an intent or purpose to serve the market in the forum state) was insufficient to establish specific jurisdiction. *See id*.

In *Proppant Solutions, LLC v. Delgado*, out-of-state corporations contracted for the delivery of goods to Texas. 471 S.W.3d at 533-34. Proppant Solutions, a California limited liability company, partnered with ChristDel, a Tennessee corporation with its principal place of business in Tennessee, to provide oilfield proppant to EOG, a Texas oil company. *Id.* After the completion of the contract,

19

Proppant Solutions filed a lawsuit claiming that ChristDel breached the partnership agreement and its fiduciary duty, and committed fraud. *Id.* Proppant Solutions also alleged that three siblings who owned ChristDel, including Tennessee resident Emma Delgado, participated in ChristDel's breach of fiduciary duty, made fraudulent misrepresentations, and conspired to commit the fraud. *Id*. Delgado filed a special appearance challenging the trial court's exercise of personal jurisdiction over her and argued that she is a Tennessee resident, has no ties to Texas outside of her business, and the petition did not allege that she committed a tort in Texas. *Id.* at 535. Proppant Solutions appealed the trial court's grant of Delgado's special appearance. *Id.*

Proppant Solutions argued that Delgado had sufficient minimum contacts with Texas because Delgado (1) "participated in negotiating the relationship between ChristDel and Proppant Solutions as they prepared to do business in Texas," (2) "personally participated in organizing the delivery and receipt [of the oilfield proppant] from China through the Port of Houston, and onto Pleasanton, Texas," (3) "sent and received e-mails to and from Texas billing for the logistic services and the expenses [of transporting the proppant]," and (4) "traveled to Texas to personally review the logistics operation." *Id.* at 537.

In determining that Delgado did not have sufficient minimum contacts with Texas to support the exercise of specific personal jurisdiction over her, the First Court of Appeals placed emphasis on the following: the contract was negotiated outside of Texas by nonresidents on behalf of two nonresident businesses and Delgado was not a party to the contract; jurisdictional analysis centers on the defendant's actions and choices to enter the forum state to conduct business, and it was the plaintiff's (not defendant Delgado's) choice for the product to be delivered in Texas; and, Delgado's communications with an off-site employee working from a home office in Houston instead of Proppant Solutions' California headquarters was merely fortuitous and the record did not contain any evidence that Delgado actively sought to work with an off-site employee in Texas or that she sought any benefit of Texas law by her actions. *Id.* at 537-43. The First Court of Appeals noted that the contract between the two companies contained a Texas choice-of-law provision and a Houston forum-selection clause, however Delgado was not a party to the contract. *Id.* at 539 n.2. Proppant Solutions did not allege a tort arising from Delgado's visit to Texas nor did Proppant Solutions assert a claim based on any alleged misrepresentation made during or in relation to the trip, and therefore the court concluded that Delgado's visit to the Texas facility was not substantially related to Proppant Solutions' claims against Delgado. *Id.* at 542.

The jurisdictional facts alleged in the present case are distinguishable from those alleged in *Hogs Dogs & Lace* and *Proppant Solutions*. Unlike *Hogs Dogs & Lace*, the present case is not a case where a product was fortuitously swept into the forum state. Rather, Jyoti alleged KEC entered into a contract with Jyoti to provide supplies to be delivered in Texas on several occasions in order for KEC to comply with KEC's contract with Isolux Spain for a Project in Texas, and KEC on at least two occasions sent representatives to Texas to meet with Isolux and Jyoti USA representatives in furtherance of the relevant contracts and the Project. Unlike the facts in *Proppant*, the facts in the present case do not involve a claim against a non-resident defendant like Delgado who was not a party to the contract, and did not participate in the contract negotiations, did not require delivery in Texas, and did not coordinate or direct the movement of proppant. *See id.* at 537-42. In the present case, KEC was a party to the contract, KEC negotiated the contract with Jyoti India, and KEC expressly required the product to be delivered in Texas for the Texas Project because KEC wanted to obtain a direct benefit and wanted to comply with its contract with Isolux Spain.[5]

---

[5] Despite KEC's position that it "had no say in the ultimate location or destination of the products[]" because it was Isolux that required delivery in Texas, KEC chose to enter into the contract with Jyoti India that included terms agreed to by the parties, and the contract included a requirement that the delivery of supplies by Jyoti India would be made in Texas.

We examine the defendant's relationship to the forum to determine whether the defendant purposefully availed itself of doing business in Texas, and the defendant's "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (quoting *Burger King*, 471 U.S. at 475). This "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see also TV Azteca*, 490 S.W.3d at 38. Courts must consider prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to determine whether the defendant purposely established minimum contacts. *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 918 (Tex. App.—Dallas 2005, no pet.). Contacts are purposeful when the defendant seeks some "'benefit, advantage, or profit' by availing itself of the forum." *Moncrief*, 414 S.W.3d at 154. As noted in *Moncrief*, the Texas Supreme Court has found jurisdiction over nonresidents with no physical ties to Texas when an out-of-state contract was formed "for the sole purpose of building a hotel in Texas." *Id.* at 154 (quoting *Zac Smith & Co., Inc. v. Otis Elevator Co.*, 734 S.W.2d 662, 665-66 (Tex. 1987)).

Similar to *Zac Smith*, KEC and Jyoti India entered into a contract outside of Texas with the sole purpose of providing materials to enable KEC to comply with its contract with Isolux Spain in furtherance of a Project located in Texas, and in order for KEC to derive the benefits of its contract with Isolux Spain. KEC benefitted from having Jyoti India and Jyoti USA deliver and supply the parts in compliance with KEC's contract with Isolux for the Texas Project. KEC's contacts with Texas were related to the "episode-in-suit." *See Daimler AG v. Bauman*, 134 S. Ct. 746, 762 n.20 (2014).

We reject KEC's argument that KEC's alleged contacts were merely fortuitous. "Fortuitous" is defined as "happening by chance or accident[,] [o]ccurring unexpectedly, or without known cause[,] [a]ccidental[,] undesigned[,] adventitious. . . ." Black's Law Dictionary 589 (5th ed. 1979). KEC purposefully entered into the contract with Jyoti India, intentionally incorporated the general conditions of its contract with Isolux Spain into KEC's contract with Jyoti India, and required the product to be delivered to Texas for a Texas Project. Pursuant to paragraph 31 of the general conditions, KEC also contractually agreed that Texas law would govern all aspects of KEC's contract with Jyoti India. KEC sent representatives to meetings in Texas wherein KEC reviewed and discussed the manufacturing and delivery of the products. Although a choice-of-law provision by

itself is insufficient to create personal jurisdiction, a choice-of law provision is a factor to consider in the minimum contacts analysis. *PCC Sterom, S.A. v. Yuma Expl. & Prod. Co*., No. 01-06-00414-CV, 2006 Tex. App. LEXIS 8702, at *25 (Tex. App.—Houston [1st Dist.] Oct. 5, 2006, no pet.) (mem. op.) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985)); *see also Burger King*, 471 U.S. at 481-82.[6] KEC failed to sufficiently negate Plaintiffs' allegations that KEC invoked the benefits and protections of Texas law by purposefully availing itself of the privilege of conducting business in Texas. *See Moncrief Oil*, 414 S.W.3d at 151-54; *see also Cornerstone Healthcare*, 493 S.W.3d at 73 (non-resident defendants contacts with Texas were purposeful because they sought both a Texas seller and Texas assets); *TV Azteca*, 490 S.W.3d at 55-57 (looking beyond the particular business transaction at issue and considering defendant's additional conduct that indicated an intent or purpose to serve the market in the forum state,

---

[6] KEC argues in a footnote in its appellate brief that the scope of or application of the choice-of-law provisions is not at issue in this appeal. Assuming without deciding the scope or application of the choice-of-law provisions, we may consider the provisions in our minimum contacts analysis. We also note that when a contract contains a "consent-to-jurisdiction" provision it will affect the analysis of personal jurisdiction. "[A] contractual 'consent-to-jurisdiction clause' subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary." *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014). No party to this appeal argues that the language in the respective contracts should be interpreted as a "consent-to-jurisdiction" provision.

the Court concluded that the defendants purposefully availed themselves of doing business in Texas in connection with their actionable conduct.).

<u>Substantial Connection Between Texas and Operative Facts</u>

Next, we examine whether the cause of action arises from or is related to the defendant's contacts or activities in the forum state. The Texas Supreme Court in *Moki Mac River Expeditions v. Drugg* emphasized that there must be "a substantial connection between [the defendant's] contacts and the operative facts of the litigation." 221 S.W.3d 569, 585 (Tex. 2007) (citing *Guardian Royal Exch.* 815 S.W.2d at 229-33 and *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)).

Jyoti alleged in its Second Petition that the controversy arises out of or is related to KEC's contacts with the forum state. KEC argued in its special appearance that KEC's communications with Jyoti USA or its travels to Texas do not give rise to the Plaintiffs' claims against KEC and that, even if they did, those contacts are not contacts between KEC and Texas, but rather contacts between KEC and Jyoti USA, a company that just "happens to reside or be located in Texas." According to KEC, "[a]t best, Plaintiffs' claims against KEC relate to and arise from KEC's alleged failure to pay Jyoti India, in India, for services Jyoti India rendered for KEC in India, under a contract negotiated to and entered [into] in India, in breach of such Indian contract." KEC's contacts in Texas and the

26

nature of the contacts were related to the progress of the Texas Project and to the fulfillment of KEC's contracts with both Jyoti India and Isolux Spain. Focusing on the relationship among the forum, the defendant, and the litigation, the claims alleged by Plaintiffs arise out of or relate to KEC's purposeful contacts with Texas. *See Cornerstone Healthcare*, 493 S.W.3d at 71; *Moncrief Oil*, 414 S.W.3d at 150; *Retamco Operating*, 278 S.W.3d at 338. Accordingly, we conclude that KEC's contacts are sufficient to support specific jurisdiction.

<u>Exercise of Jurisdiction Consistent with</u>
<u>Traditional Notions of Fair Play and Substantial Justice</u>

"Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch.*, 815 S.W.2d at 231. In evaluating whether exercising jurisdiction over a defendant with minimum contacts would be unreasonable, we consider: "(1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies." *Moncrief Oil*, 414 S.W.3d at 155. The defendant bears the burden of presenting "'a compelling case that the presence of

27

some consideration would render jurisdiction unreasonable.'" *Dodd v. Savino*, 426 S.W.3d 275, 287 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Guardian Royal Exch.*, 815 S.W.2d at 231).

KEC has failed to demonstrate that the trial court's exercise of jurisdiction in this case would be unreasonable. KEC alleged that the trial court's exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice and that it would be inconsistent with the constitutional requirements of due process because: "[f]orcing KEC to defend against Plaintiffs' claims in a foreign legal system would impose a substantial burden on KEC," KEC's employees do not reside in Texas, and all of KEC's records concerning the relevant contracts are in India. KEC also argued that Texas "has no interest in adjudicating claims between non-residents concerning events that took place outside of Texas[,]" Plaintiffs' "baseless inclusion" of Jyoti USA in the case "does not . . . create such interest[,]" and other venues (including India) "have a much greater interest than Texas in providing a forum in which this case can proceed." However, "[d]istance alone cannot ordinarily defeat jurisdiction." *Moncrief Oil*, 414 S.W.3d at 155. KEC has shown its willingness to travel to Texas when it met with representatives of Isolux and Jyoti USA in Texas in furtherance of the Texas Project. We conclude that Texas has a legitimate interest in adjudicating this dispute because the Project

28

from which the lawsuit arises is located in Texas, one of the plaintiffs is a Texas company, the contract between KEC and Jyoti India contains a Texas forum selection clause, the contract between KEC and Isolux Spain contains a Texas forum selection clause, and the contract between KEC and Jyoti India incorporates the terms of the underlying agreement that also includes an arbitration provision that requires arbitration to be held in Texas. *See ERC Midstream LLC v. Am. Midstream Partners, LP*, No. 14-15-00189-CV, 2016 Tex. App. LEXIS 5869, at *22 (Tex. App.—Houston [14th Dist.] June 2, 2016, no pet.) (Texas has an obvious interest in providing a forum for resolving disputes when, among other things, the subject oil and gas project is in Texas); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 896 (Tex. App.—Fort Worth 1997, pet. denied) ("[A]t least one agreement at issue in this lawsuit compels arbitration in Texas. Accordingly, Texas has a significant interest in adjudicating the dispute."); *see also Retamco Operating*, 278 S.W.3d at 341 ("Texas has an interest in resolving controversies involving real property within its borders[.]"). Additionally, it would promote judicial economy as well as the interests of the parties in obtaining convenient and effective relief to litigate all claims as to all parties in one court. *Moncrief Oil*, 414 S.W.3d at 155.

CONCLUSION

After reviewing the record, we conclude KEC failed to negate Appellees' alleged bases of specific jurisdiction. We overrule KEC's issues and affirm the trial court's order denying KEC's special appearance.

AFFIRMED.

$\overline{\hspace{4cm}}$
LEANNE JOHNSON
Justice

Submitted on February 1, 2016
Opinion Delivered December 8, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.