**Opinion issued July 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00800-CV

———————————

## PROPPANT SOLUTIONS, LLC, Appellant

## V.

## EMMA DELGADO, Appellee

---

On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2014-17992

---

## O P I N I O N

This is a personal jurisdiction case. Proppant Solutions, a California limited liability company, partnered with ChristDel, a Tennessee corporation, to provide oilfield proppant to EOG, a Texas oil company. After Proppant Solutions and ChristDel completed the contract, Proppant Solutions filed this lawsuit claiming

that ChristDel breached the partnership agreement, breached its fiduciary duty as a partner, and committed fraud. It also claimed that the three siblings who owned ChristDel, including Tennessee resident Emma Delgado, participated in ChristDel's breach of fiduciary duty, made fraudulent misrepresentations, and conspired to accomplish the fraud.

Emma filed a special appearance challenging the trial court's exercise of personal jurisdiction over her because she is a Tennessee resident, has no contacts with Texas outside of her business, and is not alleged in the petition to have committed a tort in Texas. Proppant Solutions responded that Texas has specific jurisdiction over Emma because of her involvement in the creation and performance of the contract between ChristDel and Proppant Solutions. The trial court granted Emma's special appearance, and Proppant Solutions timely appealed. We affirm.

## Background

This lawsuit arises from a contract between two businesses, Proppant Solutions and ChristDel. Proppant Solutions is a California limited liability company with its principal place of business in California. ChristDel is a Tennessee Corporation with its principal place of business in Tennessee.

Joseph Brown formed Proppant Solutions when, according to his affidavit, he "began looking into the business of selling oilfield proppant." Proppant

2

Solutions obtained a contract to provide oilfield proppant[1] to EOG facilities in Pleasanton, Texas. It planned to buy the proppant from China but needed a way to ship it to the United States. According to its petition, Proppant Solutions' majority owner, Brown, discovered ChristDel online. On its website, ChristDel represented that it "had extensive experience as a logistics supplier of proppant." Brown contacted ChristDel's corporate officers, including Emma; they told Brown that ChristDel "had extensive experience . . . moving large shipments of proppant from China to the U.S.A." They also represented that ChristDel "had fixed logistics contracts in place" for most of the shipping expenses and that with some variable expenses the total cost was "just over 15 cents per pound of proppant." Proppant Solutions offered—and ChristDel agreed—to fulfill the contract with EOG as a partnership, splitting the profits. As part of the partnership agreement, Proppant Solutions agreed to pay ChristDel the amount of the base costs, i.e., 15 cents per pound.

According to the petition, these representations were false. Proppant Solutions alleged that it would not have offered to complete the EOG contract with ChristDel as a partnership but for these representations. Brown relied on ChristDel

---

[1] According to the petition, "[p]roppant is a solid material, typically treated sand or man-made ceramic materials, designed to keep an induced hydraulic fracture open, during or following a fracture treatment."

because he "had no prior experience in buying, selling, or shipping proppant in the oilfield industry."

The petition alleged that ChristDel shipped millions of dollars of proppant from China to EOG in Texas over 18 months. ChristDel, acting through Emma, invoiced Proppant Solutions monthly. The invoices did not disclose ChristDel's costs, allegedly to "hide ChristDel's prior misrepresentations." Over the course of the contract, Proppant Solutions paid ChristDel over $50 million in expenses and $6 million in shared partnership profits. After the contract was completed, ChristDel refused to provide an accounting of its costs.

The petition identified four specific misrepresentations by Emma: (1) "Defendants had extensive experience in providing the logistics to move large shipments of proppant from China to Houston," (2) "Defendants had fixed logistics contracts in place and . . .the only variables were trucking fuel surcharges and demurrage," (3) "Defendants calculated their actual costs . . . [were] just over $0.15/pound of proppant," and (4) "the parties would share the profits 60/40." Proppant Solutions further alleged that Emma and the other individual defendants used ChristDel "for the purpose of perpetrating" a fraud.

All defendants appeared except Emma. Emma filed a special appearance stating that she is a Tennessee resident with no ties to Texas outside of her business, she is a director of ChristDel, she had no conversations with Proppant

4

Solutions regarding the matters in the lawsuit in her personal capacity, and all of her communications with Proppant Solutions occurred while she was in Tennessee. During her one trip to Texas in connection with the contract, she met with EOG, not Proppant Solutions.

In response to Emma's special appearance, Proppant Solutions filed an affidavit signed by its majority owner, Brown. In addition to supporting many of the factual allegations in the petition, Brown stated that after he discovered ChristDel's website he called and talked with Juan, Marcus, and Emma Delgado, who misrepresented ChristDel's experience. Contrary to these representations, ChristDel "had little or no experience in the logistics of moving proppant from China to the U.S.A." Therefore, ChristDel secretly hired a third party to perform many of its contractual obligations in return for a portion of its profits.

Brown claimed that he communicated with Emma "numerous times by email and telephone calls," although he never claimed that the communications between he and Emma were transmitted to or from Texas. With respect to the claim that ChristDel hid its costs, Brown averred that, because of her financial positon with ChristDel, Emma "had to be personally aware of . . . this fact."

Proppant Solutions filed a second affidavit by its co-owner, Michael Hall. Hall, who had primary responsibility for the company's financial matters, stated that he worked primarily out of his home in Texas and dealt directly with Emma

regarding "finance and billing." She communicated with Hall by email and telephone from her office in Tennessee. Emma sent him invoices for ChristDel's expenses. One expense item was a visit to Texas by Emma to meet with EOG officials and tour their Pleasanton facility. Finally, Hall stated that Emma also sent him documentation regarding the movement of proppant into the Port of Houston and then to Pleasanton.

Proppant Solutions filed a third affidavit signed by Ronald Cope, the principal shareholder of the Houston-based company that assisted ChristDel with shipping the proppant. Cope averred that he had estimated ChristDel's shipping cost at only 10 cents per pound, but ChristDel marked up the cost to over 15 cents per pound to increase its profits.

The trial court granted Emma's special appearance without issuing any findings of fact or conclusions of law. Proppant Solutions timely appealed.

**Standard of Review**

"Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). When, as here, the trial court did not make findings of fact or conclusions of law, we infer all findings necessary to support the trial court's ruling. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d

6

569, 574 (Tex. 2007); *Stull v. LaPlant*, 411 S.W.3d 129, 133 (Tex. App.—Dallas 2013, no pet.).

### Jurisdictional Pleading Requirements

In a special appearance, the parties bear shifting burdens. "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A plaintiff may carry its initial pleading burden in its petition or response to the defendant's special appearance. *Stull*, 411 S.W.3d at 134; *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.). If, however, "the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658–59.

"Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id*. The defendant can negate jurisdiction on either a factual or legal basis. *Id*. at 659. A

defendant negates jurisdiction on a factual basis by presenting evidence showing an absence of contacts with Texas, thus disproving the plaintiff's jurisdictional allegations. *Stull*, 411 S.W.3d at 134 (citing *Kelly*, 301 S.W.3d at 659). A defendant negates the legal basis for jurisdiction by showing that "if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts . . . fall short of purposeful availment; . . . the claims do not arise from the contacts; or . . . traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Kelly*, 301 S.W.3d at 659.

If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show that the court has personal jurisdiction over the nonresident defendant. *Stull*, 411 S.W.3d at 134. A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis. *Id.*

**Requirements for Personal Jurisdiction**

"Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

The Texas long-arm statute authorizes Texas courts to exercise personal jurisdiction over anyone "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE

8

ANN. § 17.042 (West 2015). "The broad language of the long-arm statute's 'doing business' requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations. *Spir Star*, 310 S.W.3d at 872.

Due process is satisfied "when two conditions are met: (1) the defendant has established 'minimum contacts' with the forum state, and (2) the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 210 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Depending upon the nature of a nonresident's contacts, personal jurisdiction may be general or specific. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

**Specific Jurisdiction**

Proppant Solutions asserts that Delgado is subject to specific personal jurisdiction. "Specific jurisdiction . . . arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009); *see also Moki Mac*, 221

9

S.W.3d at 576, 579 (specific jurisdiction requires satisfaction of "two co-equal components").

## A. Purposeful availment

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). To determine whether a defendant has purposefully availed herself to the benefits of Texas law, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* at 785. "The purposeful availment test should focus on 'the defendant's efforts to avail itself of the forum' and not 'the form of action chosen by the plaintiff.'" *Touradji*, 316 S.W.3d at 24 (quoting *Moki Mac*, 221 S.W.3d at 576); *see Michiana*, 168 S.W.3d at 789–90 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985)) (for determining personal jurisdiction, "it is 'the defendant's conduct and connection with the forum' that are critical").

## B. Relatedness

The second prong, relatedness, analyzes the relationship between the defendant, the forum, and the litigation. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592,

596 (Tex. 2007); *Moki Mac*, 221 S.W.3d at 576. Generally, courts analyze the relationship between jurisdictional contacts and each claim separately. *Moncrief*, 414 S.W.3d at 150. However, "a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts." *Id.* at 150–51.

## Pleadings and Evidence Before the Trial Court

Proppant Solutions asserts that Emma has sufficient minimum contacts with Texas because she: (1) "participated in negotiating the relationship between ChristDel and Proppant Solutions as they prepared to do business in Texas," (2) "personally participated in organizing the delivery and receipt [of the oilfield proppant] from China through the Port of Houston, and onto Pleasanton, Texas," (3) "sent and received e-mails to and from Texas billing for the logistic services and the expenses [of transporting the proppant]," and (4) "traveled to Texas to personally review the logistics operation."

**A.  Emma's role in forming the relationship between ChristDel and Proppant Solutions is not personal availment**

Emma's role in the formation of the relationship between ChristDel and Proppant Solutions—her response to Proppant Solutions' inquiry allegedly misrepresenting ChristDel's capabilities and experience—was not a purposeful contact with Texas for three reasons. First, the choice of Texas as the delivery point was, for Emma, entirely fortuitous. Second, nonresident agents of

11

nonresident businesses negotiated the contract outside of Texas. Third, Proppant Solutions never alleged that Emma actually participated in those negotiations.

### 1. Proppant Solutions' prior relationship with EOG is fortuitous

The mere fact that Emma's response to Proppant Solutions' inquiry led to a business agreement to fulfill Proppant Solutions' preexisting contract with EOG in Texas is not, by itself, enough to show purposeful availment. "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter . . . . By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" *Michiana*, 168 S.W.3d at 785.

In *Michiana*, a Texas plaintiff, Holten, contacted Michiana, a factory outlet for Coachmen RVs. Based on his conversations with the company, Holten purchased an RV. At Holten's request and expense, Michiana shipped the RV to Texas. *Id.* at 784. Holten subsequently sued Michiana in Texas for fraudulent misrepresentations made during Holten's telephone conversation with Michiana, for breach of contract, and for statutory claims. *Id.* at 781, 788–92.

The Court concluded that Michiana had no purposeful contacts with Texas. Michiana never solicited Holten's business. It never marketed itself in Texas nor made any attempt to enter the Texas RV market. Michiana's contact with Texas arose solely because a Texas resident decided to buy an RV from it. Had Holten

not been a Texan, Michiana would have had no contact with Texas. *Id.* at 785–87. This contact with Texas was fortuitous because it arose from Holten's actions, not Michiana's. *See id* at 786.

"[T]he mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market." *Moki Mac*, 221 S.W.3d at 577. In *Moki Mac*, Texas plaintiffs sued Moki Mac, a Utah river-rafting expedition company, in Texas for the wrongful death of their son during a rafting expedition in Arizona. The Court noted, "Unlike in *Michiana*, the evidence . . . indicates that Moki Mac does intend to serve the Texas market." *Id.* Moki Mac regularly sold rafting trips to Texas residents. It sent targeted mailings to Texas residents, advertised in Texas newspapers and national publications with Texas subscribers, ran mass and targeted direct-marketing e-mail campaigns to solicit Texas clients, worked with Texas residents to solicit Texas business, and offered Texas residents various incentives to sign up for an expedition. *Id.* at 577–78. "Moki Mac's contacts with Texas did not result, as did the defendant's in *Michiana,* from the mere fortuity that the [plaintiffs] happened to reside here. Rather, the contacts it had with Texas resulted from additional conduct through which it aimed to get extensive business in or from this state." *Id.* at 578.

13

In a commercial dispute, the unilateral activities of others will not support specific jurisdiction over a defendant. *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 422 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). In *Parex*, a Texas company, ERG, sought to buy shares of a Columbian oil and gas interest from Nabors, a Bermudan company with a Houston office. *Id.* at 412. During these negotiations, Nabors solicited other bidders from the Royal Bank of Canada, which in turn solicited a bid from Parex Canada, a Canadian company. *Id.* at 413. Parex began communicating with Nabor's Houston office about the shares. *Id.* at 414. Shortly thereafter, ERG and Nabors entered into a contract to sell the shares; when that deal failed to close, Parex re-submitted its bid. *Id.*

ERG sued Nabors and Parex for specific performance of its contract and for tortious interference of contract. But the Fourteenth Court of Appeals found that Texas did not have special jurisdiction over Parex. "Parex Canada's initial contact with Nabors . . . was solicited by Nabors and did not stem from Parex Canada's unsolicited decision to reach into Texas. Accordingly, Parex Canada's decision to engage in negotiations with a Texas company . . . was fortuitous and based on Nabors's unilateral activities." *Id.* at 421. The court noted that even after Parex began actively competing with ERG, "Parex Canada's decision to reach into Texas via these contacts was certainly less purposeful than if Parex Canada was independently seeking out a Texas seller without initial prompting from Nabors."

14

*Id.* at 422. *"Moreover, the fact that Texas-based ERG was now part of the equation was based on Nabors's unilateral decision to contract with ERG, not any Parex Canada decision." Id.* Accordingly, Parex's offer did "not support substantial Texas availment." *Id.*

This case is more like *Michiana* and *Parex* than *Moki Mac*. Here, there is no evidence that ChristDel or Emma have ever attempted to market themselves to Texas or serve the Texas market. Emma, in particular, had no self-initiated contacts with Texas. Her only contacts with Texas were, much like in *Michiana* and *Parex*, because a customer with ties to Texas contacted her Tennessee employer. Importantly, Proppant Solutions actively recruited ChristDel and its personnel, not vice versa. Proppant Solutions agreed to provide oilfield proppant to EOG in Texas. Proppant Solutions then sought out ChristDel to help perform this task. Proppant Solutions offered to fulfill the contract[2] with ChristDel and split the profits.

The dissent contends that, by relying on *Michiana* and *Moki Mac,* we "fail to recognize the distinction between establishing personal jurisdiction over a defendant in a stream of commerce case and establishing personal jurisdiction over a defendant in a fraud and fraudulent inducement case brought with respect to the negotiation and performance of a contract." But *Michiana* was a fraud case.

---

[2] The contract contains a Texas choice-of-law provision and a Houston forum-selection clause—but Emma was not a party to the contract.

15

*Michiana*, 168 S.W.3d at 788, 791. Personal jurisdiction is established by contacts, not culpability. *Id.* As *Parex* indicates, the underlying reasoning of *Michiana* and *Moki Mac*—that a defendant must purposefully reach out to Texas—is not limited to the typical stream of commerce context. Moreover, "jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business." *Kelly*, 301 S.W.3d at 660. It was Proppant Solutions, not Emma, who chose for the product to be delivered in Texas.

## 2. Nonresidents negotiated the contract outside of Texas

The contract was negotiated outside of Texas by nonresidents on behalf of two nonresident businesses. And Emma is not a party to the contract. Thus any connection to Texas from these negotiations or from the written contract alone would be "even less purposeful and more attenuated." *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 475 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (third party's Texas contacts, which resulted from a contract between two nonresidents, did not satisfy minimum-contacts requirement).

## 3. Emma's involvement in the formation of the contract was limited

The alleged scope of Emma's involvement in the formation of the business relationship is small, and the extent of Emma's knowledge regarding Proppant Solutions' relationship to Texas when she spoke to Brown is unclear. The petition simply says: "ChristDel's owners, Juan, Marc, and Emma Delgado each later

16

verified [statements on ChristDel's website] that . . . ChristDel had extensive experience in providing logistics and moving large shipments of proppant." According to Brown's affidavit, this representation was made *before* Proppant Solutions proposed to fulfill the EOG contract as a partnership. There is no allegation and no evidence regarding whether Emma participated in negotiating the partnership agreement between Proppant Solutions and ChristDel or whether she knew of Proppant Solutions' connection to EOG in Texas when she spoke to Brown.

Thus, Emma did not purposefully direct her activities toward Texas by responding to Brown's inquiries regarding ChristDel's experience shipping proppant. Rather, Proppant Solutions unilaterally responded to representations by Emma and other ChristDel associates by seeking ChristDel's assistance to fulfill Proppant Solutions' preexisting obligations to EOG. From Emma's perspective, that Proppant Solutions had previously contracted with an EOG facility in Texas, instead of any other state, was merely fortuitous.

**B.     That Emma communicated with an off-site employee working from a home office in Houston, instead of Proppant Solutions' California headquarters, was merely fortuitous**

For similar reasons, Emma's communications with Michael Hall in Houston also do not constitute a purposeful contact with Texas.

17

According to his affidavit, Hall "was responsible for handling the financial aspects of the partnership agreement between Proppant Solutions and ChristDel." Emma "handled finance and billing for ChristDel." "Each month . . . I received an invoice for the logistics of shipping the proppant from Emma. She also periodically sent me invoices for ChristDel's expenses . . . ."

It was Emma's responsibility to send these communications to her counterpart at Proppant Solutions—Michael Hall. These were business communications between a two businesses registered and headquartered outside of Texas. The record does not contain any evidence that Emma actively sought to work with an off-site employee in Texas instead of Proppant Solutions' California headquarters or that she sought any benefit of Texas law thereby. The record indicates that Hall worked from a home office in Houston. If Proppant Solutions had a functioning satellite office, the record reveals nothing about it. It does not reveal whether any other Proppant Solutions employees work in Texas or anywhere else outside of California. And it does not explain why Hall, a senior officer and co-owner of Proppant Solutions, worked at home in Houston.

Thus, the record suggests no reason why these calls and e-mails were sent to Houston other than Hall's decision to receive them there. But Hall's unilateral decision does not determine personal jurisdiction over Emma. *See Michiana*, 168 S.W.3d at 794 (RV dealership not subject to special jurisdiction in Texas because

its "only contact with Texas was Holten's decision to place his order from there"). That Hall worked from his home office in Houston, not California, was merely fortuitous. *See Parex*, 427 S.W.3d at 427 ("Parex Canada's telephone, email, and virtual data room contacts with Nabors coupled with a finding that Parex Canada intended the contacts to harm ERG in Texas is not enough to establish purposeful availment.").

## C.    The record does not establish Emma's participation in organizing the proppant delivery

Proppant Solutions also contends that specific jurisdiction is proper because Emma "personally participated in organizing the delivery and receipt [of the oilfield proppant] from China through the Port of Houston, and onto Pleasanton, Texas." The dissent agrees, contending that "[Emma] helped organize the receipt of the proppant in Houston, and she arranged for trucks to deliver it to Pleasanton. She . . . arrang[ed] the logistics of the transportation and [dealt] with financing and billing."

But Proppant Solutions' petition alleged a much more limited role: "ChristDel, through its financial officer, Emma Delgado, sent eighteen monthly invoices to Michael Hall, Proppant Solutions' financial officer in Houston, Texas." Proppant Solutions' response to the special appearance explained: "She was the administrator of ChristDel and handled its finances and invoiced Proppant Solutions monthly for expenses and logistics . . . . She was responsible for the

19

billing to Proppant Solutions for all expenses and charges for logistics for the entire project . . . ."

The only allegation to the trial court suggesting that Emma controlled or orchestrated proppant delivery comes from Proppant Solutions' sur-reply, which alleged: "Emma was involved in setting up a logistics chain in Texas to import [proppant] for ultimate destination in Pleasanton, Texas." That allegation cites an e-mail from Emma to Proppant Solutions, which states, "Juan, Marc and I have delivered a logistics chain that is competitive." Assuming that we may consider an allegation raised for the first time in a sur-reply, this sheds almost no light on Emma's role, if any, in coordinating the movement of proppant. Absent more, this is not enough to establish purposeful availment.

## D.     Emma's visit to Texas is not related to this litigation

Proppant Solutions relies on Emma's visit to EOG's Pleasanton, Texas facility to support the exercise of specific jurisdiction. But Proppant Solutions did not allege that Emma ever met with, communicated with, or committed any tort against Proppant Solutions while visiting Texas.

This contact cannot support special jurisdiction over Emma because no alleged liability arises from or is related to it. *See Kelly*, 301 S.W.3d at 659–60. In *Kelly*, an Arizona general contractor contracted to renovate a Houston hotel. *Id.* at 655. The general contractor hired several Texas subcontractors to perform the

20

work. *Id.* After the contract was performed, the hotel owner asserted that the work was substandard and sued the general contractor and the subcontractors. *Id.* at 655–56. One of the Texas subcontractors filed third-party claims for breach of contract, violation of the Texas Trust Fund Act, and fraud against the Arizona general contractor and its corporate officers. *Id.* at 656.

The third-party plaintiff asserted that the officers of the general contractor, despite operating from the Arizona office, had the following Texas contacts: they received the subcontractors' invoices from Texas, sent payments and change orders from Arizona to the subcontractors in Texas, and traveled to Texas several times during the renovation to oversee the subcontractors' work. *Id.* The Texas Supreme Court held that these activities did not allow Texas to exercise specific jurisdiction over the officers; the subcontractor's pleading "contain[ed] no allegations that the [o]fficers' wrongdoing occurred in Texas. . . . [I]t did not allege that any fraudulent acts occurred in Texas." *Id.* at 659–60. "Thus, although [the subcontractor] has alleged two claims of wrongdoing, it has not alleged that any acts giving rise to these two claims occurred in Texas." *Id.* at 660.

Nevertheless, Proppant Solutions cites *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *1 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.), to assert that Emma's one visit to Texas is enough to create specific jurisdiction. In *Carlile*, a Colorado corporation sought

out a business relationship with a Texas corporation; two officers from the Colorado corporation allegedly made fraudulent statements while meeting with the Texas corporation in Texas. *Id.* "These allegations met [the plaintiffs'] initial pleading burden by alleging acts or omissions in Texas . . . and torts arising from such conduct." *Id.* at *12.

This case is more similar to *Kelly* than *Carlile*. Here, Proppant Solutions never alleged any tort arising from Emma's visit to EOG in Texas. It has not alleged any interaction with Emma during her trip. It has not asserted a claim based on any alleged misrepresentation made during or about the trip. Therefore, Emma's visit to the EOG facility is not substantially related to Proppant Solutions' claims against her.

## E.     Proppant Solutions cannot rely on directed-at tort jurisdiction

The allegation that all of Emma's actions were part of a conspiracy intended to defraud Proppant Solutions in Texas does not aid its case. Only Emma's contacts, not the contacts of her co-defendants, affect our analysis. *See Burger King*, 471 U.S. at 474–75, 105 S. Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40 (1958)); *see also Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (criticizing conspiracy as independent basis for jurisdiction). Further, the Texas Supreme Court has rejected directed-at tort jurisdiction. *Michiana*, 168 S.W.3d at 790; *see also Curocom Energy LLC v.*

*Young-Sub Shim*, 416 S.W.3d 893, 897 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Directing a tort at the forum from afar does not constitute purposeful availment."); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14–08–00283–CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (rejecting "directed-at-tort contentions" and holding trial court did not have specific personal jurisdiction over New York law firm whose attorney created opinion letter in New York and sent it to Texas). Rather, "jurisdiction turns . . . on a defendant's contacts, [not] where the defendant 'directed a tort.'" *Michiana*, 168 S.W.3d at 790. Thus the issue is not whether there was a tortious conspiracy directed at Texas, but rather whether Emma has sufficient minimum contacts with Texas to support the exercise of specific personal jurisdiction over her. For the reasons stated in this opinion, we conclude that she does not.

## Conclusion

Under the applicable standards of review and based on Proppant Solutions' allegations and evidence, we find no substantial connection between Emma's purposeful contacts with Texas and the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 585–88 (finding no specific jurisdiction because substantial connection between defendant's purposeful contacts with Texas and operative facts of litigation did not exist); *BMC Software*, 83 S.W.3d at 797 (concluding no specific jurisdiction existed for contact that occurred outside of Texas).

Accordingly, we overrule Proppant Solutions' sole issue on appeal and affirm the trial court's order granting Emma's special appearance.

Harvey Brown
Justice

Panel consists of Justices Keyes, Higley, and Brown.