**Opinion issued October 22, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00036-CV

————————————

**LLOYD R. CUNNINGHAM, TRUSTEE, Appellant**

**V.**

**CARLOS GOMEZ, Appellee**

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2016-65188**

---

## MEMORANDUM OPINION

Lloyd R. Cunningham, as Trustee for Cunningham Interests II, Ltd., appeals an interlocutory order granting a special appearance to Carlos Gomez, a New York resident.

In one issue, Cunningham contends the trial court erred in granting Gomez's special appearance because the jurisdictional evidence supports a conclusion of specific jurisdiction over Gomez based on his attendance at a business meeting with Cunningham in Texas at which the two entered into a business agreement and Gomez made statements supporting Cunningham's fraud claim.

The parties' affidavits and documentary evidence presented two incompatible versions of events. The trial court, as factfinder, had sufficient evidence and the discretion to accept one version of events and reject the other. We will not substitute our judgment for the trial court's on issues of evidentiary weight or factfinding. Accordingly, we affirm.

**Background**

Lloyd R. Cunningham, as Trustee for Cunningham Interests II, Ltd., became interested in investing in the prepaid-calling-card market. He was introduced to individuals associated with Unlimited Recharge Inc., a company that provided international long distance services through a distributor network. Cunningham avers that he met with Carlos Gomez and Johnny Rodriguez in Houston in 2011 to discuss investing in Unlimited. According to Cunningham, at the Houston meeting, Gomez claimed to be the majority owner of Unlimited. Johnny Rodriguez claimed to have a minority ownership interest in Unlimited.

Cunningham avers that he agreed to loan Unlimited $1 million with a right to convert the loan principal into 10% equity in Unlimited. He avers that he and Rodriguez signed a convertible note in November 2011 in connection with the $1 million loan from the trust to Unlimited. Cunningham further avers that Gomez agreed to repay the trust's investment, on demand, if Cunningham ever requested he do so.[1]

Over the next two years, Cunningham, as Trustee, loaned an additional $300,000 to Unlimited under the terms of the 2011 convertible note, and, according to Cunningham, with the same assurances from Gomez that the loan would be repaid by Gomez, personally, on demand.

The calling-card business was not successful. Cunningham demanded that Unlimited repay the $1.3 million loan. It did not. He demanded that Gomez repay the loan. Gomez did not either.

In 2016, Cunningham, as Trustee, sued Unlimited and Gomez.[2] He sued Unlimited for breach of contract; he sued Gomez for breach of contract and fraud. Regarding the fraud claim, Gomez specifically alleged he relied on Gomez's agreement to repay the loan on demand in deciding to extend the loan to Unlimited.

---

[1]     Neither party produced a signed copy of the convertible note or promise to repay.

[2]     Unlimited is not a party to this appeal.

3

Gomez, who is a resident of New York, filed a special appearance. His affidavit, filed in support of his jurisdictional plea, directly disputing Cunningham's description of events. He denied that he had any ownership interest in Unlimited. He denied he met with Cunningham in Texas to discuss a loan to Unlimited. He denied he guaranteed Unlimited's debt.

Gomez admitted he met with Cunningham in Houston once, but he averred the meeting was about the possibility of buying a boat for an unrelated business venture. Gomez argued specific jurisdiction did not exist on such a limited contact with the state unconnected to the litigation.

Thus, the trial court was presented with party affidavits that contained irreconcilable statements of fact regarding the out-of-state defendant's contacts with the state in connection with the litigation.

Two additional affidavits were submitted. Gomez submitted an affidavit by Rodriguez in which Rodriguez averred that he attended a meeting in Houston with Cunningham but that Carlos Gomez was not there. According to Rodriguez, the majority owner of Unlimited is Gomez's brother, Antonio Gomez. Rodriguez asserted he had no knowledge of defendant Carlos Gomez ever traveling to Texas to discuss a loan from Cunningham or guaranteeing the loan. Rodriguez also averred that Cunningham eventually converted the $1 million loan into a 10% equity in Unlimited.

4

Cunningham submitted an affidavit from J. Brent Baker, who averred that he was at part of the Houston meeting with Cunningham and Carlos Gomez at which the two men discussed Unlimited. According to Baker, Gomez stated at that meeting that he was a principal owner of Unlimited and discussed his experience in the telephone industry. Baker left the meeting before it concluded. Later, in 2016, Cunningham confided in Baker that he was having trouble getting repaid by Gomez. According to his affidavit, Baker called Gomez on Cunningham's behalf, and Gomez indicated he intended to pay Cunningham back but needed more time.

Gomez moved to strike Baker's affidavit because Cunningham had not previously disclosed Baker as a person with knowledge of relevant facts. Gomez alternatively requested to depose Baker. The trial court issued an interlocutory order on October 29, 2018. In it, the trial court noted the conflicting affidavits of Cunningham and Gomez, denied Gomez's motion to strike Baker's affidavit, but granted Gomez's motion to allow a jurisdictional deposition of Baker. The trial court set the special appearance for submission on December 3, 2018, thereby allowing time to depose Baker.

Almost two weeks after the submission date, the trial court issued an interlocutory order granting Gomez's special appearance. The December 15 order noted that neither party had submitted supplemental evidence or briefing regarding any deposition testimony from Baker. The order granted Gomez's special

appearance, dismissed Cunningham's claims against Gomez, and stated that Cunningham's claims against Unlimited remained pending.

Cunningham requested findings of fact and conclusions of law, but the trial court denied his request. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("A trial court may, but is not required to, file findings of fact and conclusions of law after it enters an interlocutory order such as an order denying a special appearance."); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 725 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also* TEX. R. APP. P. 28.1(c).

Cunningham appeals the interlocutory order granting Gomez's special appearance and dismissing Cunningham's claims against Gomez.

## Personal Jurisdiction

In his sole issue, Cunningham argues the trial court erred in granting Gomez's special appearance because Cunningham established specific jurisdiction over Gomez and, to the extent Gomez denied jurisdictional facts, his denials were conclusory and no evidence. Within his single issue, Cunningham argues the evidence was legally and factually insufficient to support the trial court's ruling.

## A. Applicable law and standard of review

We review an order granting or denying a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Lensing v. Card*, 417 S.W.3d 152, 155 (Tex. App.—Dallas 2013, no pet.).

In a special appearance, "the plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute" that grants personal jurisdiction over a nonresident defendant. *Lensing*, 417 S.W.3d at 155. Once the plaintiff meets that burden, the defendant must "negate all bases of personal jurisdiction that have been pleaded by the plaintiff." *Id.* "In determining whether a defendant has negated all bases, we examine all the evidence in the record." *Fleischer v. Coffey*, 270 S.W.3d 334, 337 (Tex. App.—Dallas 2008, no pet.).

The trial court frequently must resolve questions of fact before deciding the jurisdictional question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When the trial court does not issue findings of fact and conclusions of law, as here, "all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795. In other words, if the trial court does not issue findings of fact, a reviewing court presumes the trial court resolved all factual disputes in favor of its judgment. *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.] 2005, no

pet.) (citing *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)). These findings are not conclusive when the appellate record includes both the reporter's and clerk's records, and they may be challenged for legal and factual sufficiency. *Id.*

A nonresident defendant, like Gomez, is subject to personal jurisdiction in Texas if Texas's "long-arm" statute authorizes personal jurisdiction and personal jurisdiction is consistent with federal and state constitutional due process. *Moki Mac*, 221 S.W.3d at 574. Because the "long-arm" statute authorizes Texas courts to exercise personal jurisdiction as far as federal constitutional requirements of due process allow, the requirements of the statute are met if the constitutional tests are satisfied. *Id.* at 575. "Consequently, in many cases, the analysis of whether a Texas court may assert personal jurisdiction over a nonresident collapses into the single inquiry of whether jurisdiction comports with federal due-process limitations." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 868 (Tex. App.—Austin 2008, no pet.).

Constitutional due process considerations are satisfied when the plaintiff shows (1) the defendant has "minimum contacts" with Texas and (2) a Texas court exercising personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The minimum-contacts test focuses on the question of whether the defendant has purposefully availed himself of the privilege of conducting activities in the forum state." *Lensing*, 417 S.W.3d at 155. In determining whether the defendant "purposefully availed himself" of the privilege of conducting activities in Texas, (1) we must "disregard any forum contacts by the defendant that resulted solely from the unilateral activity of another party or a third person"; (2) "the defendant's contacts with the forum state must be purposeful rather than random, isolated, or fortuitous"; and (3) "the defendant must have sought some benefit, advantage, or profit" from its in-state activities or invoke the benefits and protections of Texas law. *Id.* at 156. "[I]t is only the defendant's contacts with the forum that count: purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal quotation marks and ellipses omitted). "The courts consider the quality and nature of the defendant's contacts, not their number or the ubiquity of their means." *Proppant Sols., LLC v. Delgado*, 471 S.W.3d 529, 547 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The defendant's "minimum contacts" should be such that it can "reasonably anticipate being sued" in the state. *Id.* at 546 (citing *Burger King*, 471 U.S. at 475–76).

A defendant's contacts with the state are further divided into specific jurisdiction and general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is transaction specific; it "is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum" state. *Id.* at 796. General jurisdiction is broader; it arises from the defendant's "systematic and continuous" presence within the forum state and does not hinge on a link between a specific contact and the claim asserted. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). General jurisdiction "involves a more demanding minimum contacts analysis." *Id.* at 168.

In addition to establishing that a defendant has "minimum contacts" with Texas, the exercise of jurisdiction also must "comport with traditional notions of fair play and substantial justice." *Lensing*, 417 S.W.3d at 156. To determine whether this test is met, we consider "(1) the burden on the nonresident defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies." *Id.*

Cunningham has alleged specific jurisdiction. Texas courts have specific personal jurisdiction over a nonresident defendant if "(1) the defendant has purposefully availed himself of the privilege of conducting activities in the forum

10

state, and (2) there is a substantial connection between those contacts and the operative facts of the litigation." *Id.* "Even a single contact can support jurisdiction, as long as it creates a substantial connection with the forum state." *Id.*

**B. The parties' conflicting affidavits and the documentary evidence**

Cunningham's affidavit describes a Houston meeting at which he and Gomez negotiated a loan from the trust to Unlimited of $1 million and the execution of a convertible note. Cunningham contends that, during the meeting in Houston, Gomez asserted he was the majority owner of Unlimited and agreed to repay the loan personally if Cunningham later demanded repayment. Cunningham argues that specific jurisdiction exists because his claims arise from Gomez's assurances made at this Houston business meeting and the business agreement between Unlimited and the trust that resulted from it.

Gomez denies Cunningham's factual assertions and maintains that he never claimed to have an ownership interest in Unlimited, never came to Houston to discuss Unlimited business, and never guaranteed the loan to Unlimited.

There was documentary evidence in the record for the trial court's consideration. Cunningham presented evidence that Gomez had emailed with Cunningham using an Unlimited email address, that Cunningham sent Gomez several emails in 2013 expressing concerns about Unlimited's viability and

11

frustration with Gomez as a "business partner," and that Gomez had personally invested money in Unlimited.

In response, Gomez described some of Cunningham's evidence as favorable to Gomez. First, several of the emails Cunningham relied on were with Rodriguez and Gomez's brother, not him. Second, one of the emails from Cunningham to Rodriguez referenced the Houston meeting but made no reference to Gomez having been there or made any representations.

Neither party included in the record a signed copy of the convertible note on which Cunningham based his breach-of-contract claims. Nor was there a signed document evincing any agreement by Gomez to repay Unlimited's debts.

The record does not reveal whether Baker was deposed, as the trial court's October 2018 order allowed. No additional evidence was presented to the trial court regarding the deposition, if it occurred.

## C. We will not substitute our judgment for the trial court's resolution of conflicting evidence

Trial courts frequently must resolve fact issues before deciding personal jurisdiction questions. *BMC Software*, 83 S.W.3d at 794. In that circumstance, it is the sole province of the trial court to determine the credibility of the witnesses, weigh the evidence, and resolve conflicts in the evidence. *Benoit v. Wilson*, 239 S.W.2d 792, 796–97 (Tex. 1951); *Huynh v. Nguyen*, 180 S.W.3d 608, 615 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Puri v. Mansukhani*, 973 S.W.2d 701,

711 (Tex. App.—Houston [14th Dist.] 1998, no pet.). The parties presented the trial court with incompatible versions of events. Either Gomez came to Houston and discussed a trust loan to Unlimited of $1 million or he did not. The trial court implicitly resolved the conflicts in evidence against Cunningham and in favor of Gomez when the trial court granted Gomez's special appearance. We are not factfinders and will not substitute our judgment for that of the factfinder, even if there is conflicting evidence from which a difference conclusion could be supported. *Puri*, 973 S.W.2d at 710–11; *see Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 469 (Tex. App.—Austin 2006, no pet.).

There was sufficient evidence to support the trial court's implied findings of fact. Gomez's affidavit denies he attended a business meeting in Houston to discuss Unlimited or the trust's potential financial investment in the company. Gomez denied any ownership interest in Unlimited. And he denied ever agreeing to reimburse the trust any amounts loaned to Unlimited.[3]

---

[3]     Cunningham argues these statements in Gomez's affidavit are conclusory and therefore no evidence, but we cannot agree. "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990–A, Ltd.,* 249 S.W.3d 380, 389 n.32 (Tex. 2008) (quoting BLACK'S LAW DICTIONARY 308 (8th ed. 2004)); *see Concierge Nursing Centers, Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 50 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Gomez did not merely state that he had no contacts with Texas or that his contacts were insufficient to establish personal jurisdiction. Instead, he averred that he did not come to Texas to meet with Cunningham to discuss Unlimited business, nor did he agree to guarantee any loan made to Unlimited by the trust. These are specific statements denying jurisdictional facts.

Rodriguez's affidavit was consistent with Gomez's version of events. Rodriguez stated that Gomez's brother is the majority owner of Unlimited, not Gomez. Rodriguez averred that he negotiated with Cunningham in Houston and that Gomez was not at the meeting. Further, Rodriguez had no knowledge of Gomez ever discussing a $1 million loan with Cunningham or agreeing to personally repay the loan.

There is an unsigned copy of a convertible loan in the record. It contains a generic signature line for Unlimited without identifying who might be the officer or director to sign on the entity's behalf. Nowhere in the document is an Unlimited officer or director identified at all.[4] Cunningham failed to present any document tying Gomez to the meeting in Houston, the agreement to loan money to Unlimited, or a personal obligation to repay the loan if Cunningham demanded repayment.

The trial court had sufficient evidence to support its implied findings in Gomez's favor. While there was evidence from which a contrary conclusion could have been reached, we cannot conclude the trial court's ruling was against the great weight and preponderance of the evidence so as to be manifestly erroneous or unjust. *See Navasota Resources*, 212 S.W.3d at 468–69. The disputed evidence

---

[4]  Cunningham contends Rodriguez, not Gomez, signed the note on behalf of Unlimited, even though Gomez is alleged to be the majority owner who personally obligated himself to repay the loan on demand.

allowed for the trial court's factual resolution. We will not substitute our judgment for the factfinder's, even if some evidence supports a contrary conclusion. *See Puri*, 973 S.W.2d at 710–11. Accordingly, we will not disturb the trial court's ruling on the special appearance.

## Conclusion

We affirm the trial court's order granting Gomez's special appearance and remand for further proceedings.

Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.