**Opinion issued February 13, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00503-CV

————————————

## AJAMIE LLP, Appellant

## V.

## PODESTA GROUP, INC., A/K/A PODESTA GROUP LLC, Appellee

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1121669**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from an order granting a special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). A Texas-based law firm, Ajamie LLP, hired a Washington, D.C.-based lobbying and public affairs firm, Podesta Group, Inc., to lobby the United States Congress and Federal Communications

Commission on behalf of a group of clients litigating claims in Delaware Chancery Court. The parties memorialized their agreement in a written contract with a three-year term.

Dissatisfied with Podesta's alleged failure to perform during the final six months of the contract, Ajamie refused to pay Podesta's final invoice, and Podesta sued Ajamie in D.C. Superior Court to recover the unpaid balance. Ajamie countersued in Texas state court, and Podesta filed a special appearance, which the trial court granted.

On appeal, Ajamie argues that the trial court erred in granting the special appearance because Podesta established minimum contacts with Texas by soliciting Ajamie for business, entering into the contract, regularly communicating with Ajamie's lawyers, and receiving monthly payments from Ajamie's bank account. Assuming these contacts are sufficient to show Podesta purposefully availed itself of the privilege of conducting activities in Texas, they are not substantially connected to the operative facts of the litigation, which concern what Podesta did (and did not do) in Washington, D.C., not Texas.

We hold that Podesta's Texas contacts do not support an exercise of personal jurisdiction in this case. Accordingly, we affirm.

**Background**

In this appeal from the trial court's order granting a special appearance, the underlying dispute involves a simple claim for breach of contract. There are two parties. The first is Ajamie LLP, a law firm organized under the laws of Texas with its principal place of business in Houston, Texas. The second is Podesta Group, Inc., a lobbying and public affairs firm organized under the laws of Delaware with its principal place of business in Washington, D.C.

***Ajamie is retained to represent the Clients in lawsuits in Delaware Chancery Court***

In 2011, Ajamie was retained by a group of over 60 former minority partners in AT&T's mobile phone business who were embroiled in a dispute with AT&T ("the Clients"). Two of the Clients were residents of Texas, and the rest were residents of other states. Collectively, they filed 11 separate lawsuits against AT&T in Delaware Chancery Court ("the AT&T Litigation").

***Ajamie hires Podesta to lobby Congress and the FCC on the Clients' behalf***

Because the AT&T Litigation had a public policy dimension, Ajamie decided to hire a lobbying firm to help with the cases. Ajamie ultimately decided on Podesta, in part because Ajamie's managing partner, Tom Ajamie, was a friend of Podesta's founder and president, Tony Podesta.

Ajamie executed a Consulting Agreement with Podesta on behalf of the Clients. Under the Consulting Agreement, Podesta agreed to "render government

relations services with the U.S. Congress and at the Federal Communications Commission to the Clients with respect to public policy matters related to the AT&T litigation." And the Clients agreed to pay Podesta a $15,000 monthly retainer fee and a percentage of any money damages recovered in the AT&T Litigation.

The Consulting Agreement had a three-year term, starting June 15, 2014, and ending June 14, 2017, with the option to terminate at any time upon 30 days' notice. Although the Consulting Agreement was between Podesta and the Clients, it provided that Podesta would "not communicate with the Clients directly" but would instead "communicate with and take direction from" Ajamie. It further provided that Podesta could send notice concerning the agreement to Ajamie's office in Houston and that the Clients could send such notice to Podesta's office in D.C., among other specified methods.

### *Ajamie refuses to pay Podesta's final invoice*

Things went well for the first two-and-a-half years. But, Ajamie alleges, during the final six months, Podesta's services began to decline and then ceased altogether. As a result, at the end of the term, Ajamie did not renew the contract and refused to pay Podesta's final invoice.

### *Podesta and Ajamie sue each other*

4

In November 2018, Podesta filed suit against Ajamie in D.C. Superior Court, asserting a claim for breach of contract to recover the final unpaid invoice. In its complaint, Podesta alleged that jurisdiction was proper because Podesta "provided government relations consulting services to Ajamie, primarily in the District of Columbia."

Four days later, Ajamie filed the underlying suit against Podesta in Texas state trial court, asserting its own claim for breach of contract based on Podesta's alleged repudiation of the Consulting Agreement. In its petition, Ajamie alleged that jurisdiction was proper because its claim arose out of Podesta's business in Texas.

*Podesta files a special appearance in the Texas lawsuit*

In response to Ajamie's suit, Podesta filed a special appearance, arguing that it is not subject to personal jurisdiction in this case because the Consulting Agreement required it to provide services in Washington, D.C., not Texas. Podesta asserted that the proper forum for resolving the parties' dispute was Washington, D.C., where its own lawsuit was already pending.

Podesta supported its special appearance with Tony Podesta's sworn declaration. In it, he asserted that: (1) the Consulting Agreement called for Podesta to engage in a variety of activities in Washington D.C.; (2) the Consulting Agreement never required any activity of Podesta Group in Texas; (3) in performing under the Consulting Agreement, Podesta took actions in Washington D.C. and

5

never took any action in Texas; and (4) at no time from the formation of the Consulting Agreement to the present did Podesta engage in any activity in Texas in furtherance of the Consulting Agreement.

Ajamie filed a verified response to Podesta's special appearance. In it, Ajamie asserted that Podesta established sufficient minimum contacts by touting its connections to the Texas congressional delegation and well-known Texas lobbyists as part of its bid to win Ajamie's business; entering into the Consulting Agreement, which created a continuous relationship between Podesta and Ajamie; constantly communicating with Ajamie's Houston-based lawyers during the first two years of the Consulting Agreement; sending monthly invoices to Ajamie's Houston office; and accepting as payment for those invoices deposits from Ajamie's Houston bank account. Ajamie further observed that the D.C. Superior Court had dismissed Podesta's lawsuit for want of prosecution and that the Texas lawsuit was the only live proceeding.

Ajamie supported its response with a number of exhibits, including the Consulting Agreement, an April 2017 invoice from Podesta to Ajamie, bank records showing monthly payments to Podesta from Ajamie's bank account, and an order from the D.C. Superior Court denying Podesta's motion to reinstate the D.C. lawsuit.

In June 2019, the trial court held a hearing on Podesta's special appearance. Tom Ajamie testified as a fact witness. Mr. Ajamie testified that Mr. Podesta had

6

"solicited [his] business here in Texas," touting his connections with the Texas congressional delegation and Texas lobbyists as a reason for hiring his firm. Mr. Ajamie further testified that these connections were "one of multiple" reasons he hired the firm. Notably, Mr. Ajamie denied Mr. Podesta's sworn statement that he did no work in Texas, testifying that, sometime "within the first year" after the parties signed the Consulting Agreement, Mr. Podesta came to Texas to do work "on a number of things, including this contract . . . ." However, Mr. Ajamie did not specify the nature of that work, and his testimony conflicted with Ajamie's own petition, which alleged that Mr. Podesta "performed none" of the work under the Consulting Agreement "and instead delegated the work to others at the firm."

After the hearing, the trial court granted Podesta's special appearance. Ajamie appeals.

## Special Appearance

In its sole issue, Ajamie contends that the trial court erred in granting Podesta's special appearance.

### A. Applicable law and standard of review

A nonresident defendant is subject to personal jurisdiction in Texas if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate the due process guarantees of the federal and state constitutions. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

The Texas long-arm statute allows the exercise of personal jurisdiction to reach as far as the federal constitutional requirements of due process will allow. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 17.042.

The exercise of personal jurisdiction is consistent with due process when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 657. A nonresident defendant establishes minimum contacts with the forum state when it purposefully avails itself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws. *Id.* at 657–58.

Depending on the nature of a nonresident's contacts, personal jurisdiction may be either general or specific. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). General jurisdiction is party-focused, whereas specific jurisdiction is transaction-focused. *Gulf Coast Int'l, L.L.C. v. Research Corp. of the Univ. of Hawaii*, 490 S.W.3d 577, 584 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). This case concerns specific jurisdiction.

Specific jurisdiction arises when (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37.

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). It requires the nonresident defendant to have purposefully availed itself of the privilege of conducting activities in the forum state. *Id.*

In determining whether a nonresident defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider the defendant's own actions without considering the unilateral activity of any other party and ask (1) whether the defendant's actions were purposeful rather than random, isolated, or fortuitous, and (2) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* at 785.

The second prong of specific jurisdiction, relatedness, "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). It requires that there be a "substantial connection" between the defendant's forum contacts and the operative facts of the litigation. *Id.* at 585.

In determining whether there is a substantial connection, we do not require proof that the plaintiff would have no claim "but for" the contacts or that the contacts were a "proximate cause" of the liability. *TV Azteca*, 490 S.W.3d at 52–53. Instead, we consider what the claim is "principally concerned with," whether the contacts will be "the focus of the trial" and "consume most if not all of the litigation's attention," and whether the contacts are "related to the operative facts" of the claim. *Id.* at 53.

If the defendant's alleged actionable conduct occurred entirely outside the forum state, the defendant's in-state contacts will generally be insufficiently related to the operative facts of the plaintiff's claim to satisfy the second prong. *See, e.g.*, *Moki Mac*, 221 S.W.3d at 585 ("[A] nonresident's in-state advertising is generally insufficiently related to a negligence claim based on personal injury that occurs out of state to support an exercise of specific jurisdiction."); *Ashdon, Inc. v. Gary Brown & Assocs., Inc.*, 260 S.W.3d 101, 113 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Generally, a contract calling for performance outside of Texas does not subject a party to jurisdiction here."); *Univ. of Alabama v. Suder Found.*, No. 05-16-00691-CV, 2017 WL 655948, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.) ("Even a sustained contractual relationship with a Texas resident does not support the exercise of jurisdiction if the contract is centered around the nonresident's

'operations outside Texas.'" (quoting *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009)).

Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *Kelly*, 301 S.W.3d at 657.

In a special appearance, the plaintiff and the defendant have shifting burdens of proof. *Id.* at 658. The plaintiff has the initial burden to plead sufficient facts to bring a defendant within the reach of the Texas long-arm statute. *Id.* If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* If, however, the plaintiff fails to meet its initial burden, the defendant need only prove that it is not a Texas resident to negate jurisdiction. *See id.* at 658–59.

Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Id.* at 658. The defendant has no burden to negate a potential basis for personal jurisdiction when it is not pleaded by the plaintiff. *See id.*

The defendant can negate jurisdiction on either a factual or legal basis. *Proppant Sols., LLC v. Delgado*, 471 S.W.3d 529, 536 (Tex. App.—Houston [1st Dist.] 2015, no pet.). A defendant negates jurisdiction on a factual basis by presenting evidence showing an absence of contacts with Texas, thus disproving the plaintiff's jurisdictional allegations. *Id.* A defendant negates the legal basis for

jurisdiction by showing, as relevant here, that even if the plaintiff's alleged facts are true, the plaintiff's claims do not arise from the contacts. *Id.*

When, as here, the trial court does not issue findings of fact or conclusions of law, we imply all facts that are necessary to support the ruling and supported by the evidence. *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 832 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We will affirm the trial court's ruling on any legal theory that finds support in the record. *Id.*

## B.    Analysis

Ajamie argues that the trial court erred in granting Podesta's special appearance because Podesta established sufficient minimum contacts to support an exercise of specific jurisdiction in this case. Ajamie bases its argument on two principal contacts.

First, Podesta solicited Ajamie for business in Texas, touting its connections to the Texas congressional delegation and well-known Texas lobbyists as a reason for Ajamie to hire the firm.

Second, and more fundamental to Ajamie's argument, Podesta entered into the Consulting Agreement, which Ajamie describes as a "long-term" contract that created an "ongoing business relationship" between the two parties. Throughout the contract's term, Podesta "regularly communicated" with Ajamie's Texas-based lawyers, mailed its monthly invoices to Ajamie's Texas office, and accepted

12

payment for those invoices from deposits from Ajamie's Texas bank account. Ajamie emphasizes that Podesta entered into the Consulting Agreement knowing its work would be used by Ajamie in Texas to develop its strategy for the AT&T Litigation. Ajamie contends that the present dispute "arises directly" from the Consulting Agreement and therefore establishes the minimum contacts necessary for a Texas court to exercise specific jurisdiction over Podesta.

Podesta's Texas contacts may be sufficient to show that Podesta purposefully availed itself of the privilege of conducting activities in Texas. But they are not substantially connected to the operative facts of the litigation.

Podesta's contacts, though marginally relevant, do not concern facts that are in dispute. Podesta's alleged liability does not arise from them. Instead, Podesta's liability arises from his alleged failure to perform his contractual duties during the final six months of the Consulting Agreement's term. The operative facts of the litigation therefore concern whether Podesta performed under the contract during this time. The evidence shows that Podesta would have performed his duties in Washington, D.C., not Texas.

This evidence starts with the Consulting Agreement itself, which required Podesta to "render government relations services with the U.S. Congress and at the Federal Communications Commission." Congress and the FCC are both located in

Washington, D.C. Podesta is also located in Washington, D.C. This indicates that Washington, D.C. is where Podesta would have rendered the services.

The evidence also includes Tony Podesta's sworn declaration, in which he stated that (1) the Consulting Agreement required Podesta to engage in a variety of activities in Washington D.C.; (2) the Consulting Agreement never required any activity of Podesta in Texas; (3) in performing under the Consulting Agreement, Podesta took actions in Washington D.C. and never took any action in Texas; and (4) at no time from the formation of the Consulting Agreement to the present did Podesta engage in any activity in Texas in furtherance of the Consulting Agreement.

Mr. Podesta's statement that he did not work in Texas conflicts with Mr. Ajamie's testimony that Mr. Podesta did at least some work in Texas during the first year of the contract. A fact dispute therefore exists over whether Podesta performed part of the contract in Texas. Because we must imply all findings of fact that are supported by the evidence in favor of the trial judge's ruling, we assume the trial court resolved this dispute in favor of Podesta.

The evidence shows that Podesta would have performed its contractual duties during the final six months of the Consulting Agreement in Washington, D.C. Because Podesta would have performed in Washington, D.C., that is where its alleged breach would have occurred. Because Podesta's alleged actionable conduct occurred entirely outside of Texas, we hold that Podesta's Texas contacts are

14

insufficiently related to the operative facts of Ajamie's claim to satisfy the second prong of specific jurisdiction. *See Univ. of Alabama*, 2017 WL 655948, at \*8 (breach-of-contract claim asserted by private foundation that provided funding to out-of-state public university did not arise from or relate to university's Texas contacts when university's alleged breaches were of contractual obligations to be performed in foreign state, not Texas).

Accordingly, we overrule Ajamie's sole issue.

## Conclusion

We affirm.

Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.